# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 13-0561** (Berkeley County 10-F-163)

**Melvin G. S.,**
**Defendant Below, Petitioner**

**FILED**

March 28, 2014
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Melvin G. S.[1], by counsel James P. Riley IV, appeals his conviction of four counts of sexual assault by a parent, guardian, or custodian, and three counts of sexual assault in the third degree. Petitioner was sentenced by the Circuit Court of Berkeley County on February 4, 2013. Respondent State of West Virginia, by counsel Cheryl K. Saville, filed a response to which petitioner replied.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the trial court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2010, petitioner was indicted on four counts of sexual abuse by a parent, guardian, or custodian, and three counts of sexual assault in the third degree. Petitioner was forty-six or forty-seven years old at the time of the alleged crimes. The victim was petitioner's girlfriend's daughter. Petitioner had lived with the victim and her mother since the victim was three years old. Petitioner began assaulting the victim when she was thirteen. At age fourteen, the victim discovered she was pregnant. She terminated the pregnancy; however, DNA testing of the fetus showed that petitioner was the father.

Prior to trial, petitioner sought to enter the testimony of Brittany F., the victim's friend, pursuant to Rule 404(a)(3) of the West Virginia Rules of Evidence. At a hearing on the matter, Ms. F. testified that the victim told her that she (the victim) had sex in a gas station bathroom with a boy and he might have impregnated her. The trial court denied petitioner's motion to enter Ms. F.'s testimony at trial because it was not "specifically related" to the acts for which petitioner was charged pursuant to Rule 404(a)(3), and manifest injustice would not result from its exclusion. However, the trial court noted that Ms. F.'s testimony might be admissible under

---

[1] Consistent with our practice in cases involving sensitive matters, we have replaced petitioner's last name with his last initial. *See State v. Edward Charles L.*, 183 W.Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990); *see also* W.Va. Rule of App. P. Rule 40(e)(1).

1

the Rape Shield Statute, West Virginia Code § 61-8B-11 (b), if the victim's sexual history was made an issue at trial.

The case went to trial on October 16, 2012. The jury found petitioner guilty of all seven counts of the indictment on October 23, 2012. Petitioner's post-trial motion for a new trial was denied by the trial court.

On February 4, 2013, the trial court sentenced petitioner to ten to twenty years in prison for each of the four counts of felony sexual abuse by a parent, guardian, or custodian to be served consecutively, and one to five years in prison for each of the three counts of felony sexual abuse to be served concurrently with each other, but consecutively to the prior four counts.

Petitioner now appeals his conviction and the trial court's denial of his post-trial motion for a new trial.

Petitioner raises five assignments of error on appeal. Petitioner first argues that the trial court erred in denying his pretrial motion to allow Brittany F.'s to testify at trial. Petitioner claims that Ms. F.'s testimony was relevant because the State's expert and the defense's expert disagreed as to whether DNA testing had proved that petitioner had fathered the victim's fetus. Thus, petitioner claims there was a valid and probative reason to allow Ms. F.'s testimony into evidence.

Before we begin our analysis of this assignment of error, we first note that petitioner's characterization of the experts' "disagreement" regarding whether petitioner fathered the fetus is inaccurate. Although petitioner's expert witness had concerns regarding a second and more thorough DNA test of the fetal tissue, the defense's expert admitted that—once he understood the process for the second DNA test—his concerns were allayed. Importantly, the first test showed that it was 99.69% likely that petitioner had fathered the fetus, and the second test showed that it was 99.99% likely that he was the father.

Turning now to petitioner's claim that the trial court erred in denying his pretrial motion to enter Ms. F.'s testimony at trial, we have said, "'A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard.' Syl. Pt. 4, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998)." Syl. Pt. 2, *State v. Payne*, 225 W.Va. 602, 694 S.E.2d 935 (2010). Specifically, we review petitioner's claims regarding the exclusion of the proffered evidence pursuant to Syllabus Point 6 of *State v. Guthrie*, 205 W. Va. 326, 518 S.E.2d 83 (1999), which provides that,

> [t]he test used to determine whether a trial court's exclusion of proffered evidence under our rape shield law violated a defendant's due process right to a fair trial is (1) whether that testimony was relevant; (2) whether the probative value of the evidence outweighed its prejudicial effect; and (3) whether the State's compelling interests in excluding the evidence outweighed the defendant's right to present relevant evidence supportive of his or her defense. Under this test, we will reverse a trial court's ruling only if there has been a clear abuse of discretion.

*Id.* at 330, 518 S.E.2d at 87. Applying the facts in this case to *Guthrie*, it is clear that the trial court did not abuse its discretion in denying petitioner's motion to introduce Ms. F.'s testimony. First, the testimony was not relevant to the determination of whether petitioner engaged in felonious sexual contact, intrusion, and/or intercourse with the victim. Second, the prejudicial effect of Ms. F.'s testimony did not outweigh its probative value due to the high risk of unfair prejudice to the State, and the testimony's lack of probative value to the crimes charged. Third, the State's interests in excluding Ms. F.'s testimony far outweighed petitioner's interests in introducing it because the State had an interest in upholding West Virginia's Rape Shield Law, West Virginia Code § 61-8B-1l (b), which requires that

> [i]n any prosecution under this article evidence of specific instances of the victim's sexual conduct with persons other than the defendant, opinion evidence of the victim's sexual conduct and reputation evidence of the victim's sexual conduct shall not be admissible: Provided, That such evidence shall be admissible solely for the purpose of impeaching credibility, if the victim first makes his or her previous conduct an issue in the trial by introducing evidence with respect thereto.

*Guthrie*, 205 W.Va. 333, 518 S.E.2d 90. Therefore, the only manner in which Ms. F.'s testimony could have been entered at trial was for the purpose of impeachment if the State or the victim made her past sexual conduct an issue at trial.

Petitioner's second assignment of error is that, at trial, the lower court erred in denying his renewed motion to admit Ms. F.'s testimony where the motion was made immediately after the victim put her past sexual conduct into evidence. In support of this argument, petitioner cites to the following portion of defense counsel's cross-examination of the victim:

DEFENSE COUNSEL: Now, [the State] asked you on direct did your mom get mad at you. I believe your answer was no, she didn't. Correct?

THE VICTIM: Correct.

DEFENSE COUNSEL: And, she didn't make you feel like you had done anything wrong? Is that correct?

THE VICTIM: Yes

DEFENSE COUNSEL: And, she didn't get mad at you because you *falsely accused* [petitioner] of being the father of your child? She was mad at him and not you? Is that correct? [Emphasis added.]

THE STATE: Your Honor, that's argumentative and he's putting words in her mouth. She never falsely accused him.

THE COURT: Well this is cross.

3

THE STATE: Well he's still putting words in her mouth.

DEFENSE COUNSEL: I said "is that correct"? She can answer yes or no judge, as the case may be.

THE VICTIM: I don't understand what you're saying because I never falsely accused him. *I know it was him because I wasn't having sex with anybody else.* [Emphasis added.]

DEFENSE COUNSEL: I think that's all I have at this time judge.

Petitioner claims that the victim's answer, "I know it was him because I wasn't having sex with anybody else[,]"put her past sexual conduct into question at trial. Therefore, Ms. F.'s testimony was admissible to impeach the victim's credibility pursuant to West Virginia Code § 61-8B-1l(b). Petitioner admits that the trial court denied his motion on the ground that defense counsel invited the error, but argues that the victim's answer was not invited because it was not sought by defense counsel, and was not related to the question she was asked: "And, she didn't get mad at you because you falsely accused [petitioner] of being the father of your child? She was mad at him and not you? Is that correct?" Petitioner contends that he was merely asking whether the victim's mother was angry with her.

Before we address this assignment of error, we highlight the following exchange which petitioner omitted in his brief on appeal. The exchange occurred just prior to the testimony excerpted above by petitioner:

DEFENSE COUNSEL: Are you sure you didn't know you were pregnant before that phone call on September 3rd at City Hospital?

THE STATE: Your Honor, may I ask the relevance of this question, what it has to do with the elements of this crime or credibility?

THE COURT: If we're going to go into it more, we need to have a sidebar.

DEFENSE COUNSEL: Let me ask it this way.

THE COURT: All right.

DEFENSE COUNSEL: Prior to September the 3rd, did you suspect that you were pregnant?

THE VICTIM: No.

DEFENSE COUNSEL: Never did?

THE VICTIM: No.

4

DEFENSE COUNSEL: Never had a conversation with any of your close friends?

THE VICTIM: No.

THE STATE: Again, Your Honor, I don't understand whether or not-

THE COURT: Sustained.

In light of the exchange in total, we find that the trial court did not err in finding that defense counsel posed the above-referenced line of questioning for the specific purpose of eliciting a response from the victim about her past sexual conduct. In denying petitioner's renewed motion to enter Ms. F.'s testimony, the trial court properly relied upon *State v. Crabtree*, 198 W.Va. 620, 482 S.E.2d 605 (1996), in which we said,

> Where inadmissible evidence is introduced solely as a result of the rigorous examination of the complaining party, the error is deemed invited error. *State v. Hanson*, 181 W.Va. 353, 363, 382 S.E.2d 547, 557 (1989); *Fluharty v. Wimbush*, 172 W.Va. 134, 137, 304 S.E.2d 39, 42 (1983).
>
> "Invited error" is a cardinal rule of appellate review applied to a wide range of conduct. It is a branch of the doctrine of waiver which prevents a party from inducing an inappropriate or erroneous response and then later seeking to profit from that error. The idea of invited error is not to make the evidence admissible but to protect principles underlying notions of judicial economy and integrity by allocating appropriate responsibility for the inducement of error. Having induced an error, a party in a normal case may not at a later stage of the trial use the error to set aside its immediate and adverse consequences. In Syllabus Point 1 of *State v. Compton*, 167 W.Va. 16, 277 S.E.2d 724 (1981), we stated:
>
>> "'An appellant or plaintiff in error will not be permitted to complain of error in the admission of evidence which he offered or elicited, and this is true even of a defendant in a criminal case.' Syl. pt. 2, *State v. Bowman*, 155 W.Va. 562, 184 S.E.2d 314 (1971)."

*Id.* at 627, 482 S.E.2d. 612. In the case at bar, it is clear that defense counsel was attempting to get the victim to "open the door" regarding her past sexual conduct and, therefore, invited the error of which he now complains. Such invited error cannot defeat the proscriptive language of West Virginia Code § 61-8B-1l(b).

Petitioner next argues that the trial court erred in denying his motion to dismiss the indictment because it was legally insufficient under Article III, Section 14 of the West Virginia Constitution and West Virginia Rule of Criminal Procedure 7(c)(1). Petitioner specifically claims that the counts of the indictment charging petitioner with sexual abuse by a parent, guardian, or custodian (Counts One, Three, Five, and Seven) (1) did not specify which acts petitioner was accused of perpetrating (i.e., sexual intercourse *or* sexual intrusion *or* sexual contact); (2) did not

specify whether the acts were perpetrated or only attempted; and (3) did not provide a time or date when the alleged violations occurred. Counts One, Three, and Five of petitioner's indictment read as follows:

> That MELVIN G. [S.] between the _ day of August 2009 and the _ day of September 2010 in the said County of Berkeley, State of West Virginia, did then and there unlawfully, intentionally and feloniously engage or attempt to engage in sexual intercourse, sexual intrusion, or sexual contact with [the victim], the said [victim] then being a minor child under the care, custody or control of the said MELVIN G. [S.], her parent, guardian, or custodian, in violation of Chapter 61, Article 8D, Section 5(a) of the West Virginia State Code, as amended, against the peace and dignity of the State.

Petitioner highlights that Count Seven is identical to Counts One, Three, and Five with the exception that the "August, 2009" date in Counts One, Three, and Five, was replaced with a "July, 2010" in Count Seven. Petitioner claims that taken together, these errors precluded him from providing all possible defenses and may, at some future date, violate the constitutional proscription against double jeopardy.

> "Generally, the sufficiency of an indictment is reviewed *de novo*. An indictment need only meet minimal constitutional standards, and the sufficiency of an indictment is determined by practical rather than technical considerations." Syl. pt. 2, *State v. Miller*, 197 W.Va. 588, 476 S.E.2d 535 (1996).

Syl. Pt. 3, *State v. Wallace*, 205 W.Va. 155, 517 S.E.2d 20 (1999). Further,

> [a]n indictment is sufficient under Article III, § 14 of the West Virginia Constitution and W. Va. R. Crim. P. 7(c)(1) if it (1) states the elements of the offense charged; (2) puts a defendant on fair notice of the charge against which he or she must defend; and (3) enables a defendant to assert an acquittal or conviction in order to prevent being placed twice in jeopardy.

Syl. Pt. 6, *id.*

Counts One, Three, Five, and Seven of petitioner's indictment followed the language of the relevant statute, West Virginia Code §61-8D-5(a); fully informed petitioner of the particular offense with which he was charged; and enabled the court to determine the statute upon which the charge was based: West Virginia Code §61-8D-5(a). Further, both the citation and the language of the counts made clear that petitioner was being charged for sexual acts (as opposed to sexual exploitation) perpetrated upon the victim, who is identified by name. Regarding whether the alleged acts were completed or merely attempted; or whether the act was sexual intercourse, sexual intrusion or sexual contact; any completed or attempted such act would have sufficed to sustain a conviction under West Virginia Code § 61-8D-5(a). Hence, the trial court did not err in determining that the indictment met minimal constitutional standards and followed the guidelines of West Virginia Rule of Criminal Procedure 7.

6

As for petitioner's complaint regarding the absence of definitive dates in the indictment, we addressed that issue in *State v. David D.W.*, 214 W.Va. 167, 588 S.E.2d 156 (2003). In *David D.W.*, the defendant asserted that his 206 count indictment—which included multiple counts of sexual abuse by a parent, guardian, or custodian—was insufficient because it lacked specific dates on which the alleged offenses purportedly occurred. *Id.* at 172, 588 S.E.2d at 161. This Court disagreed and concluded that the indictment was sufficient pursuant to West Virginia Code § 62–2–10, which provides that "[n]o indictment or other accusation shall be quashed or deemed invalid . . . for omitting to state, or stating imperfectly, the time at which the offense was committed, when time is not of the essence of the offense[.]" This Court concluded that, because time was not an element of the sexual crimes charged against the defendant, the lack of definitive dates did not render defendant's indictment legally insufficient. Based on our ruling in *David D.W.*, we likewise find in the case sub justice that the absence of definitive dates in petitioner's indictment does not affect its legal sufficiency because time was not an essential element of the crimes charged against petitioner.

The defendant in *David D.W.* also argued that without definitive dates in his indictment, "it would be impossible for him to plead his convictions as a bar to a later prosecution, since the State could draft a new indictment alleging that the same offenses occurred on one of the days of the month not alleged in the previous indictment." 214 W.Va. at 173, 588 S.E.2d at 163. However, as we found in *David D.W.*, the lack of specific dates in such an indictment does not vitiate a defendant's ability to plead double jeopardy upon an acquittal or conviction. "A conviction under an indictment charged, though the proof was at variance regarding immaterial dates, precludes a subsequent indictment on the exact same material facts contained in the original indictment." *Id.* (citing *State ex rel. State v. Reed*, 204 W.Va. 520, 524, 514 S.E.2d 171, 175 (1999)). Hence, because the indictment did not violate the constitutional proscription against double jeopardy, we find that the trial court did not err in denying petitioner's motion to dismiss it.

Petitioner next argues that, given the insufficiency of his indictment, the trial court erred in denying his motion for a bill of particulars.

"The ruling of a trial court concerning the sufficiency of a bill of particulars will not be reversed on appeal unless the trial court abused its discretion." Syl. Pt. 5, *State v. Meadows*, 172 W.Va. 247, 304 S.E.2d 831 (1983). Furthermore,

> "[i]t is fundamental that the accused must be fully and plainly informed of the character and cause of the accusation. The Constitution so requires . . . . A bill of particulars is for the purpose of furnishing details omitted from the accusation or indictment, to which the defendant is entitled before trial." *State v. Counts*, 90 W.Va. 338, 342, 110 S.E. 812, 814 (1922). *See State v. Koski*, 101 W.Va. 477, 133 S.E. 79 (1926). *See also* 3A M.J. *Bill of Particulars* § 3 (1976).

*Id.* at 254, 304 S.E.2d 838. Following a hearing on the matter, the trial court denied petitioner's motion for a bill of particulars because the State had given the defense all of the information that it had in its possession and furnished all details to which petitioner was due under the law. As such, we find that the trial court did not abuse its discretion in denying petitioner's motion for a

bill of particulars because petitioner's indictment was not legally insufficient and the State fully complied with petitioner's discovery requests.

Petitioner's fifth and final assignment of error is that the trial court erred in denying his post-trial motion for a new trial due to the cumulative errors at trial, including those noted above, as well as the court's failure to grant access to medical records.

> "'"Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence." Syl. pt. 4, *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976).' Syllabus point 1, *Andrews v. Reynolds Memorial Hospital, Inc.*, 201 W.Va. 624, 499 S.E.2d 846 (1997)." Syllabus point 1, *Lively v. Rufus*, 207 W.Va. 436, 533 S.E.2d 662 (2000).

Syl. Pt. 1, *State v. White*, 228 W.Va. 530, 722 S.E.2d 566 (2011).

In addressing this assignment of error, we first note that petitioner fails to list which medical records he was denied or how any denial allegedly impacted his defense. As for petitioner's claim of cumulative error, it does not apply herein because we have found no error. Therefore, because petitioner fails to show that the trial court acted under some misapprehension of law or evidence, we find that it did not abuse its discretion in denying petitioner's motion for a new trial.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** March 28, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

8